## Fraternal Benefit Societies and Trade Unions

BROWN, Deputy Attorney General, October 29, 1942.
—Your department has requested an opinion as to whether a fraternal benefit society can predicate continued good standing in the order upon the member's observance of certain trade union principles.

Fraternal benefit societies are governed by the Act of July 17, 1935, P. L. 1092, as amended, 40 PS §1051 et seq. Section 17 provides that the constitution and laws of a society shall be filed with the Insurance Commissioner at the time of incorporation. A foreign fraternal benefit society which seeks admission to do business in Pennsylvania is examined by your department and is required to submit its constitution and laws to your department.

Your inquiry arises by reason of the fact that a foreign fraternal benefit society recently submitted to your department the constitution of said society which provides for the expelling of members under certain conditions, one such condition reading as follows:

"For taking the place of a striker or for not participating in a strike declared by a bona fide union through

the vote of a majority of workers or employees of the establishment. For using the services of a worker or employee who replaced a striker or who refused to participate in a strike declared by a bona fide union through the vote of a majority of employees of the establishment."

You inform us that in the year 1919 the Department of Justice, while not issuing an opinion, stated in correspondence that such a provision as that quoted above is against public policy and that the invocation of such provision against a member is such an illegal act as to be cause for the forfeiture of the charter of the society.

According to the definition of a fraternal benefit society as given in section 1 of the act, these societies are carried on for the mutual benefit of the members and their beneficiaries, are not for profit, have a lodge system and representative form of government, and may even limit membership to a secret fraternity having a lodge system.

Section 17 (1) (b) of the act, after providing that the purpose clause shall not include more liberal powers than are granted by the act, has only the following to say about the purpose for which such a society may be formed, and we take it that this would be applicable also to a foreign society:

"Any lawful social, intellectual, educational, charitable, benevolent, moral, or religious advantages may, however, be set forth among the purposes of the society."

Subsection 1 of section 10 of the Fraternal Benefit Society Act, supra, provides that the constitution and laws of the society shall constitute, in part, the agreement between the society and the member regarding the member's beneficiary certificate. Said subsection provides, in part, as follows:

"Every beneficiary certificate shall specify the amount of benefits furnished thereunder and shall pro-

vide that the certificate, charter, or articles of incorporation, or, if a voluntary association, the articles of such association, *the constitution and laws of the society,* the application for membership, and medical examination or health certificate, signed by the applicant, and all amendments to each thereof, *shall constitute the agreement between the society and the member.*" (Italics supplied)

Section 9 of the act, which empowers the society to legislate upon and regulate its internal activities, reads in part as follows:

"Every such society shall provide for the payment of death benefits and may provide for the erection of monuments to mark the graves of its deceased members and shall have the power: *To make, alter, and amend its constitution and laws for the government of the society, to arrange for the management of its affairs, the admission and classification of its members, to control and regulate terms and conditions governing the issuance of its beneficiary certificates . . .*" (Italics ours.)

In part, section 6 of the said act provides also as follows:

"Such constitution and laws, when made and altered and amended, shall be the law governing the society and its officers, board of directors, or managers, subordinate or constituent lodges, councils, or branches, *and all members and beneficiaries in their relation thereto.*" (Italics supplied.)

The Superior Court, in Bagaj v. First Slovak Wreath of the Free Eagle, 136 Pa. Superior Ct. 344 (1939), a case involving a fraternal benefit society, at page 346 says:

"By becoming a member of the defendant organization, Bagaj agreed to abide by all its laws and regulations, which determine its power and obligations."

It is our conclusion, therefore, that the particular society in question can bind its members to the con-

stitutional provision above quoted without violating the present law governing such societies.

We revert to the question of public policy, above mentioned. It is to be noted that 23 years have transpired since this department expressed itself on this matter of public policy, as above outlined, and it is to be noted further that during this period of 23 years there have been many changes in the law of the United States and of this Commonwealth with respect to labor and trade unions. Taking the present laws and court decisions as a basis for determining present public policy we readily dispose of the 1919 suggestion by saying that such a provision in the constitution or law of a fraternal benefit society is not now against public policy.

We do not infer, however, that any constitutional provision or law of such a society must be accepted by your department. Section 17(1) (b), quoted above, emphasizes that a purpose must be lawful. Conceivably a constitution might provide that the members owe allegiance to some foreign nation, or that the members shall belong to some political group inimical to our government, or the purpose in other respects might be unlawful or immoral. We, therefore, commend your department for its zeal in scrutinizing all such matters and we advise that your department is warranted in refusing to accept a fraternal benefit society should its law, constitution, or charter contain provisions objectionable for reasons suggested above. The question of public policy is also always open. As we have said, however, in this case we find nothing objectionable, or unlawful, or against public policy.

We desire, also, to comment upon the suggestion of this department made in 1919 to the effect that the invocation of what was then considered an objectionable provision against a member would be such an illegal act as to be cause for the forfeiture of the charter of the society.

As we have pointed out above, the law specifically provides that the constitution and bylaws of the society are a part of the agreement between the society and the member and it follows, of course, that the member is bound thereby regardless of what appears in his beneficiary certificate. It is true that in the ordinary case of insurance the policy contains all the terms and conditions, but as has been suggested throughout herein fraternal insurance is distinctively different in this respect because the members bind themselves together by a lodge system for their mutual benefit and not for profit, and membership may even be limited to members of a secret fraternity having a lodge system. It is not the case of an assured dealing at arm's length with an insurer. In fact, section 5 of the act discloses this difference between fraternal insurance and the usual type of insurance. Section 5 provides as follows:

"The word 'Insurer' or any other general designation as used in the laws now in force or hereafter enacted, governing any form of insurance whatsoever, *shall not apply to fraternal benefit societies unless expressly designated therein.*" (Italics supplied.)

Because of the law herein quoted and because of the nature of fraternal societies as above described, we are unable to find any intention that an individual member be accorded the same protection that is due a holder of an insurance policy of the usual type. The member of a fraternal society joins it with his eyes open. It follows that there is no requirement upon the Insurance Department of this Commonwealth to afford the member of such a society protection other than that protection which the individual member receives through the supervision by the department of the society.

We are of the opinion, therefore, and you are accordingly advised that:

1. Neither the law nor present public policy would justify you in refusing to accept for filing the consti-

tution of a fraternal benefit society which provides for the expulsion of members who refuse to follow the observance of certain trade union principles.

2. The invocation of such a provision against a member of a fraternal society is not such an illegal act as to be cause for the forfeiture of the charter of the society.